STEWART, J.
 

 |, The defendant, Derek Wayne Hayes, was convicted of possession of a firearm by a convicted felon. After being adjudicated a habitual offender, he was sentenced to life imprisonment without benefit of probation or suspension of sentence. The defendant now appeals. For the reasons set forth below, we affirm the defendant’s conviction and sentence.
 

 FACTS
 

 On the evening of June 13, 2007, several agents of the Shreveport Police Department, Narcotics Division, knocked on the defendant’s front door. Agent Bo Lum-mus, the case agent on the investigation conducted that evening, testified that he and Agents Eric Ardoin and Lyn Allen, as well as Deputy Gary Bailey of the Caddo Parish Sheriffs Office, K-9 Unit, traveled to 8954 Rolling Ridge Dr. in Caddo Parish to investigate a narcotics complaint they had received earlier that day. Agent Lummus testified that the officers arrived at the defendant’s home at approximately 7:45 p.m. All three officers testified that they knocked on the front door, which was answered by the defendant. They then testified that they identified themselves and told the defendant that they were investigating a narcotics complaint and that the defendant invited them into his home. Lummus stated that the defendant subsequently gave them permission to search the home.
 

 After consent to search the home was given, but prior to the discovery of any contraband or evidence, a white female arrived at the house. When she was let in, she waved some money around and stated that she:
 

 ... needed a 40. She didn’t know the police were there and a 40 is street slang for $40 worth of crack cocaine.
 
 *607
 
 When she |2seen [sic] the agents there she quickly put the money in the pocket and walked out, you know, as if she’d been shocked to see that we were there. And one of the assisting agents followed her out there and conducted an investigation. At that time he found cocaine in her pocket or somewhere on her person. She was arrested and during that investigation she advised that she was there to purchase narcotics from Mr. Hayes. So that’s why I advised him of his rights and then asked him about that situation.
 

 Deputy Gary Bailey and his K-9 were called to the scene. While searching the bedroom, Bailey discovered a handgun between the mattresses. He testified that narcotics are often hidden there. Bailey informed Lummus, who then asked the defendant about the gun. Lummus testified that the defendant told him that he was a convicted felon. “I asked him if the gun belong [sic ] to him and he advised me that it belong [sic ] to his brother. However, he knew it was in the bedroom and he had it there for his wife’s security while he was gone.” The defendant also told Lummus that he was aware that it was illegal for him to possess a firearm. Agent Ardoin was not present for the questioning of the defendant because he was outside dealing with another incident.
 

 For the defense, the defendant’s brother and wife testified that the gun belonged to Ronathon Hayes, the defendant’s brother. They further testified that Ronathon had brought it over the day before the police went to the house, because Wandalyn Hayes, the defendant’s wife, was frightened to be at home by herself while her husband played poker at the casinos. Ro-nathon failed to disclose several prior criminal convictions on direct examination that were revealed on cross-examination. Ronathon and Wandalyn testified to the same basic series of facts: Wandalyn called |aRonathon because she was frightened, and he visited the house to sit with her for a little while. When he left, he gave her his gun for protection, but told her not to tell her husband because he would be angry.
 

 The jury returned a verdict 11-1 of guilty as charged of possession of a firearm by a convicted felon. The state filed a habitual offender bill of information charging the defendant as a third felony habitual offender, of which he was subsequently found guilty. The defendant was sentenced on January 7, 2008, to the mandatory sentence of life imprisonment at hard labor without benefit of probation, parole, or suspension. The defendant now appeals.
 

 LAW AND DISCUSSION
 

 Excessive Sentence
 

 In the defendant’s first assignment of error, he contends that a life sentence, without the benefit of probation, parole, or suspension of sentence, is excessive. To support this contention, the defendant pointed out that the district court stated that the life sentence was excessive, but that it was mandated to impose such a sentence under La. R.S. 15:529.1.
 

 When a defendant fails to timely file a La. C. Cr. P. art. 881.1 motion to reconsider sentence the appellate court’s review is limited to the bare claim that the sentence is constitutionally excessive.
 
 State v. Mims,
 
 619 So.2d 1059 (La.1993);
 
 State v. Jones,
 
 41,449 (La.App. 2 Cir. 9/20/06), 940 So.2d 61;
 
 State v. Duncan,
 
 30,453 (La.App. 2 Cir. 2/25/98), 707 So.2d 164. Constitutional review turns upon whether the sentence is illegal, grossly disproportionate to the severity of the offense or shocking to the sense of justice.
 
 State v. Lobato,
 
 603 So.2d 739 (La.1992);
 
 State v. Livingston,
 
 39,390 (La.App. 2
 
 *608
 
 Cir. 4/6/05), 899 So.2d 733;
 
 State v. White,
 
 37,815 (La.App. 2 Cir. 12/17/03), 862 So.2d 1123.
 

 In this case, La. R.S. 15:529.1(A)(l)(b)(ii) mandated a life sentence without benefits for defendant because he is a third felony offender and the two prior felonies (both simple burglary) are punishable by up to 12 years’ imprisonment at hard labor. La. R.S. 15:529.1(A)(l)(b)(ii). This statute states in pertinent part:
 

 ii. If the third felony and the two prior felonies are felonies defined as a crime of violence under R.S. 14:2(B), a sex offense as defined in R.S. 15:540 et seq. when the victim is under the age of eighteen at the time of the commission of the offense, or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for ten years or more, or any other crimes punishable by imprisonment for twelve years, or any combination of such crimes, the person shall be imprisoned for the remainder of his natural life, without the benefit of parole, probation, or suspension of sentence.
 

 Because the sentence imposed for the habitual offender adjudication is prescribed by statute, the trial court’s compliance with La. C. Cr. P. art. 894.1 is not required.
 
 State v. Gay,
 
 34,371 (La.App. 2 Cir. 4/4/01), 784 So.2d 714. It would be an exercise in futility for the trial court to discuss the factors enumerated in that article when the court had no discretion in sentencing the defendant.
 
 State v. Johnson,
 
 31,448 (La.App. 2 Cir. 3/31/99), 747 So.2d 61,
 
 writ denied,
 
 99-1689 (La.11/12/99), 749 So.2d 653,
 
 cert. denied,
 
 529 U.S. 1114, 120 S.Ct. 1973, 146 L.Ed.2d 802 (2000).
 

 In reviewing claims of excessiveness of mandatory life sentences, courts have recognized that the mandatory life sentences the habitual offender law requires are presumptively constitutional and should be |fiaccorded great deference by the judiciary.
 
 State v. Johnson,
 
 97-1906 (La.3/4/98), 709 So.2d 672;
 
 State v. Wade,
 
 36,295 (La.App. 2d Cir.10/23/02), 832 So.2d 977,
 
 writ denied,
 
 2002-2875 (La.4/4/03), 840 So.2d 1213. Since the habitual offender law is constitutional in its entirety, the minimum sentences it imposes upon recidivists are also presumed to be constitutional.
 
 State v. Johnson, supra; State v. Gay, supra.
 

 A court may only depart below the minimum sentence if it finds clear and convincing evidence in the particular case before it which would rebut the presumption of constitutionality.
 
 State v. Gay, supra.
 
 This court has held that the burden is on the defendant to rebut the presumption that a mandatory minimum sentence is constitutional. To do so, the defendant must “clearly and convincingly show that he is exceptional which in this context means that because of unusual circumstances this defendant is a victim of the legislature’s failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.”
 
 State v. Johnson, supra; State v. Robbins,
 
 43,240 (La.App. 2d Cir.6/4/08), 986 So.2d 828;
 
 State v. Wade, supra.
 

 Furthermore, a trial judge may not rely solely upon the nonviolent nature of the instant or past crimes as evidence which justifies rebutting the presumption of constitutionality. The lack of violence cannot be the only reason, or even the main reason for declaring such a sentence excessive.
 
 State v. Johnson, supra; State v. Henry,
 
 42,416 (La.App. 2 Cir. 9/19/07), 966 So.2d 692,
 
 writ denied
 
 07-2227 (La.8/29/08), 989 So.2d 95;
 
 State v. Wade,
 
 
 *609
 

 supra.
 
 Also
 
 State v. Lindsey,
 
 99-3256 (La.10/17/00), 770 So.2d 339.
 

 |fiIn the instant case, the trial court judge made note of the defendant’s poor health as well as the court’s understanding that the defendant had not had any significant run-ins with the law during the last few years of his life. The trial court judge also noted that he believed that the defendant had been dealing drugs from his residence. The trial judge stated that he believed the mandatory minimum life sentence was too harsh a sentence to place on a defendant for three prior nonviolent offenses. But, the trial judge felt his hands were tied, because jurisprudence has established that a history of nonviolent offenses cannot be the sole reason for a downward adjustment of a mandatory minimum sentence. The trial court did not err in this determination.
 

 Considering the nature of the defendant’s present conviction, the mandatory life sentence is not constitutionally excessive. Thus, this assignment has no merit.
 

 Ineffective Assistance of Counsel
 

 In the second assignment of error, the defendant asserts that his assistance of defense counsel was ineffective.
 

 The defendant argues that trial counsel was ineffective for a number of reasons:
 

 1) The record does not contain a motion to suppress the search of the defendant’s home.
 

 2) Trial counsel failed to object when the state, during opening argument stated, “[ejvery defendant in this state has the right to have a jury trial of his peers which is why you’re here. Prisons are full of people who exercised their right to a jury trial,” despite La. C. Cr. P. art. 771’s specific language prohibiting such comments.
 

 173) The state misled the jury as to the meaning of constructive possession during jury selection and trial counsel failed to object.
 

 4) Trial counsel failed to object to the introduction of “other crimes” evidence when officers testified that they knocked on the defendant’s door regarding a narcotics complaint.
 

 5) Trial counsel failed to object when Agent Lummus testified regarding the woman who came to the door seeking narcotics.
 

 6) Trial counsel failed to object when Agent Lummus again testified regarding discussions with the defendant about narcotics activity.
 

 7) Trial counsel failed to object when the state solicited the same testimony regarding the woman at the door from Agent Ardoin. The defense further argues that “[i]t cannot be assumed that, without the harmful and ineffective defense of defense counsel, the verdict would have been the same.”
 

 As a general rule, a claim of ineffective assistance of counsel is more properly raised in an application for post-conviction relief (“PCR”) in the trial court than by appeal. This is because PCR creates the opportunity for a full evidentia-ry hearing under La. C. Cr. P. art. 930.
 
 State ex rel. Bailey v. City of West Monroe,
 
 418 So.2d 570 (La.1982);
 
 State v. Ellis,
 
 42,520 (La.App. 2d Cir.9/26/07), 966 So.2d 139,
 
 writ denied,
 
 07-2190 (La.4/4/08), 978 So.2d 325. A motion for new trial is also an accepted vehicle by which to raise such a claim.
 
 Id.
 
 When the record is sufficient, this issue may be resolved on direct appeal in the interest of judicial economy.
 
 State v. Ratcliff,
 
 416 So.2d 528 (La.1982);
 
 State v. Willars,
 
 27,394 (La.App. 2d Cir.9/27/95), 661 So.2d 673.
 

 
 *610
 
 Although the defendant has set out a number of reasons why trial counsel was ineffective, many of those reasons could and should be elaborated upon through an evidentiary hearing in the district court. The vast number of specific allegations of ineffectiveness should be addressed [sby the district court after an evidentiary hearing on an application for post-conviction relief, allowing for the state and trial counsel to explain the alleged errors and allowing for the trial court to determine whether the result in the case would have been different but for trial counsel’s error.
 

 This assignment is therefore without merit.
 

 Pro Se Brief
 

 The defendant argues in the first assignment of error of his
 
 pro
 
 se brief that “[c]ounsel’s failure to put forth the only possible defense in this case was unmitigated negligence, and combined with the likelihood of success of a Motion to Suppress, denied the right to a fair trial and effective representation of counsel.” (Emphasis in original.) The defendant argues that had a motion to suppress been filed, the court would have granted it because the search was illegal and would have resulted in a dismissal of the charges against the defendant.
 

 The issue of ineffectiveness of counsel has been addressed above. As state above, the assignment of error has no merit.
 

 In the defendant’s second
 
 pro se
 
 assignment of error, he argues that an illegal search and seizure was conducted in violation of the Fourth Amendment to the United States Constitution and Article I § 5 of the Louisiana Constitution.
 

 An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. La. C. Cr. P. art. 841;
 
 State v. Jones,
 
 41,299 (La.App. 2d Cir.11/9/06), 942 So.2d 1215;
 
 State v. Smith,
 
 39,698 (La.App. 2d Cir.6/29/05), 907 So.2d 192;
 
 State v. Bosley,
 
 29,253 (La.App. 2d Cir.4/2/97), 691 So.2d 347, writ
 
 denied,
 
 97-1203 (La.10/17/97), 701 So.2d 1333.
 

 A new basis for an objection cannot be raised for the first time on appeal. La. C. Cr. P. art. 841;
 
 State v. Cressy,
 
 440 So.2d 141 (La.1983);
 
 State v. Sims,
 
 40,300 (La.App. 2d Cir.10/26/05), 914 So.2d 594;
 
 State v. O’Neal,
 
 501 So.2d 920, 924 (La.App. 2d Cir.1987),
 
 writ denied,
 
 505 So.2d 1139 (La.1987).
 

 Since this error was not raised in the trial court, we cannot consider it on appeal. This assignment is therefore without merit.
 

 In the defendant’s third
 
 pro se
 
 assignment of error, he argues that his possession of a firearm by a convicted felon conviction is not subject to enhancement.
 

 In
 
 State v. Sanders,
 
 337 So.2d 1131 (La.1976), the court held that it was not the intent of the legislature to provide for enhancement of the felon in possession of a firearm statute under the habitual offender law. The legislature subsequently amended La. R.S. 14:95.1 and the supreme court reconsidered its stance.
 

 In
 
 State v. Baker,
 
 2006-2175 (La.10/16/07), 970 So.2d 948, the Louisiana Supreme Court overruled
 
 Sanders,
 
 stating:
 

 After reviewing the language of La. R.S. 14:95.1, we find that there is nothing in the statute, both as originally enacted and as now configured, which explicitly indicates that a penalty imposed under this statute may be subsequently enhanced. The converse is also true. There is nothing in the language of the statute which explicitly prohibits a penalty imposed under the statute from
 
 *611
 
 being subsequently enhanced. Consequently, the actual wording of the statute does not adequately address the issue of subsequent enhancement of the statute’s penalty.
 

 [[Image here]]
 

 We find our previous reasoning in
 
 Sanders
 
 to be faulty in this respect. Although the legislature did include specific language regarding enhancement in La. C. Cr. P. art. 893, the lack of explicit language in the statute at issue does not automatically mean that the habitual offender law does not apply. Instead, we find the lack of such specific language in the firearm statute to be similar to many other felony statutes, which rely on the general applicability of the language of the habitual offender law to enhance the penalties of those crimes when there are prior felony convictions. La. R.S. 15:529.1 provides for enhancement of penalties for “[a]ny person who, after having been convicted within this state of a felony ... thereafter commits any subsequent felony within this state ...” As this court has previously noted, there is no restriction on the type of felony which may be enhanced by the habitual offender law.
 
 State v. Murray,
 
 357 So.2d 1121, 1124 (La.1978), rev’d on other grounds,
 
 State v. Skipper,
 
 2004-2137 (La.6/29/05), 906 So.2d 399, 416. Only by reading into the statute something which is not there, i.e. a specific prohibition as to further enhancement, can the result in
 
 Sanders
 
 be reached. We find that the language of La. R.S. 14:95.1 does not support a finding that a penalty imposed under its provisions may not be enhanced by the habitual offender law.
 

 Id.
 
 at 953-955. Chief Justice Calogero dissented from this majority opinion.
 

 This court adopted the ruling in
 
 Baker
 
 in
 
 State v. Brooks,
 
 43,613 (La.App. 2d Cir.10/29/08), 997 So.2d 688, and
 
 State v. Platt,
 
 43,708 (La.App. 2d Cir.12/3/08), 998 So.2d 864.
 

 This assignment is therefore without merit.
 

 In his fourth
 
 pro se
 
 assignment of error, the defendant asserts that he was denied the right to confrontation, which is a violation of the Sixth Amendment of the United States Constitution. More specifically, the defendant argues that the erroneous admission of the hearsay testimony of Bo Lummus violated the defendant’s right to confrontation. The defendant argues that the fact that Officer Lummus acted on out-of-court statements may be relevant to explain his conduct, but it should not simply “become a [ upasskey to bring before the jury the substance of the out-of-court information that would otherwise be barred by the hearsay rule.”
 

 As stated above, an irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. La. C. Cr. P. art. 841;
 
 State v. Jones, supra; State v. Smith, supra; State v. Bosley, supra.
 
 A new basis for an objection cannot be raised for the first time on appeal. La. C. Cr. P. art. 841;
 
 State v. Cressy, supra; State v. Sims, supra; State v. O’Neal, supra.
 
 In this assignment, the defendant attempts to raise another issue not previously raised in the trial court. Therefore, this assignment of error is mer-itless.
 

 CONCLUSION
 

 For the foregoing reasons, the defendant’s conviction and sentence are affirmed.
 

 AFFIRMED.